UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-CV-22430-UNGARO/SIMONTON

AKBAR MOATAMEDI
    Plaintiff,

v.

BECKMAN COULTER, INC.,
a Delaware corporation,
    Defendant,

_____/

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY PARTIAL JUDGMENT

THIS CAUSE is before the Court upon Defendant's Motion for Summary Partial Judgment, filed April 17, 2009. (D.E. 25). Plaintiff filed his Response in opposition on May 6, 2009. (D.E. 31.) Defendant filed its Reply in further support of its Motion on May 18, 2009. (D.E. 40.) Accordingly, the Motion is now ripe for adjudication.

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.

### BACKGROUND AND FACTS[1]

On September 3, 2008, Plaintiff filed his Complaint, which alleged six counts against his

---

[1] Defendant has submitted a statement of material facts in support of its Motion, (D.E. 27), and Plaintiff has submitted a response to Defendant's statement of facts. (D.E. 32.) To the extent that Plaintiff do not controvert the facts alleged by Defendant and those facts are supported by the record, the Court adopts the facts contained within Defendant's statement. *See* S.D. Fla. L.R. 7.5.D ("All material facts set forth in the movant's statement filed and supported as required by Local Rule 7.5.C will be deemed admitted unless controverted by the opposing party's statement . . . ").

former employer, Defendant Beckman Coulter, Inc.  Four counts remain at this time:[2] retaliation under 42 U.S.C. § 1981 (Count I); disparate treatment under 42 U.S.C. § 1981 (Count II); hostile work environment under 42 U.S.C. § 1981 (Count III); and failure to pay overtime compensation under 29 U.S.C. §§ 201-219 (Count V).  (D.E. 1.)  In the instant Motion, Defendant has moved for summary judgment on Plaintiff's three Section 1981 claims (Counts I - III) only.

I.      **The Parties**

Defendant is a provider and manufacturer of biomedical testing instruments, test, and supplies.  (Def's Statement of Material Undisputed Facts (D.E. 27, "DSMUF") ¶ 1.)  At all material times, Defendant was an Equal Opportunity Employer and had written policies to that effect.  (DSMUF ¶ 2.)

Plaintiff is of Iranian ethnicity.  (DSMUF ¶ 6; Compl. ¶ 1.)  In 1994, Plaintiff was hired by Defendant's predecessor, and after several promotions, he ultimately became a Field Engineer with the Defendant in 1999.  (*Id*.)  As a Field Engineer, Plaintiff was primarily responsible for servicing Defendant's customers by installing, repairing and maintaining medical instruments and providing support to service contracts.  (DSMUF ¶ 7.)  Plaintiff had limited interaction with his co-workers and managers because he worked out of his home and at client sites.  (DSMUF ¶ 11.)  Plaintiff had a friendly relationship with most his co-workers; he liked his co-workers and believed that they liked him.  (DSMUF ¶ 12; Plaintiff's Response and Dispute to Statement of Undisputed Facts (D.E. 32, "Pl's Resp. DSMUF") ¶ 12.)

Plaintiff actively worked as a Field Engineer until February 7, 2009, when he took medical leave to care for a work-related injury.  (DSMUF ¶ 8.)  While on leave, Plaintiff

---

[2]       Counts IV and VI have been dismissed.  (*See* D.E. 9 and 24.)

2

remained employed with Defendant, received Worker's Compensation, and benefits. (*Id.*) He demonstrated an interest in returning to active employment with Defendant while on leave. (DSMUF ¶ 9.) Plaintiff never resigned from his employment with Defendant. (*Id.*) On March 6, 2009, Plaintiff's employment with Defendant ended as a result of a lay-off. (*Id.*)

## II.     Complaints Regarding Racial Name-Calling and Threats

Plaintiff's co-worker, Ricky Simmons ("Simmons"), referred to Plaintiff as a "terrorist" and a "camel jockey" in several meetings where Plaintiff's managers were present. (Moatamedi Declaration (D.E. 31-2) ¶ 10.) Simmons was Plaintiff's acquaintance, and there were times when Simmons's comments were made jokingly and Plaintiff took it that way. (Moatamedi Dep. 91:17-25, 92:1-4, 93:1-11.) However, sometime around 2005, Simmons made racial remarks at a dinner where Plaintiff's managers were present. (DSMUF ¶ 34.) Plaintiff confronted Simmons the next day, at which time Simmons apologized to Plaintiff and stopped making racial comments altogether. (DSMUF ¶ 35.) Plaintiff acknowledges that Simmons's comments were not maliciously made, but that Simmons was more of a "jokester." (Moatamedi Dep. 91: 17-25, 92:1-3.)

In 2006, Plaintiff's co-worker, Tony Fabrizio ("Fabrizio"), phoned Plaintiff and left a message wherein he threatened Plaintiff and the lives of Plaintiff's family. (Moatamedi Decl. ¶ 13.) Plaintiff called Fabrizio the next day to confront him, and Fabrizio engaged in racial name-calling and again threatened Plaintiff and his family. (*Id.*) Plaintiff immediately reported the phone calls to Ken Hyek ("Hyek"), Plaintiff's regional manager, and Mike Roberts ("Roberts"), Plaintiff's immediate supervisor. (Moatamedi Decl. ¶ 15.) Plaintiff previously had work-related disputes with Fabrizio and believed that Fabrizio called to threaten him because he was "under

pressure" and because Plaintiff previously refused Fabrizio's request to assist him in completing one of his assignments.  (DSMUF ¶ 18.)

On approximately May 11, 2006, Plaintiff contacted Defendant's Human Resources Manager, Larry Braun ("Braun"), regarding Fabrizio's threats.  (DSMUF ¶ 20.)  Braun investigated Plaintiff's complaint against Fabrizio by conducting interviews with both Plaintiff and Fabrizio.  (DSMUF ¶ 20.)  Fabrizio denied Plaintiff's allegations and alleged that Plaintiff himself made racial remarks during the call.  (DSMUF ¶ 21.)

On May 22, 2006, Plaintiff obtained a restraining order against Fabrizio.  (Moatamedi Decl. ¶ 16.)  Plaintiff promised to provide Braun a copy of the May 22, 2009 restraining order and other documentary evidence supporting his claim, but never did.  (*Id.*)

Hyek also wanted to discuss the incident with Fabrizio and Plaintiff, but Plaintiff refused to attend a meeting with Fabrizio because to do so would violate the restraining order.  (Moatamedi Decl. ¶ 17.)  Hyek, Roberts and Braun told Plaintiff that his job was in jeopardy if he did not attend the meeting unless he could provide proof of a restraining order, which Plaintiff ultimately provided.  (Moatamedi Decl. ¶ 22.)

After their investigations and consultation with in-house counsel about the matter, neither Hyek or Braun were able to substantiate either employee's claims.  (DSMUF ¶¶ 21-22.)  From that point forward, Plaintiff had no further contact with Fabrizio, no longer worked with Fabrizio, and did not receive any further threats from Fabrizio.  (DSMUF ¶ 36.)

## LEGAL STANDARD

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file,

4

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. When determining whether the moving party has met this burden, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of proving that no genuine issue of material fact exists, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997); *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envntl. Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981).[3] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). If reasonable minds might differ on the inferences arising from undisputed facts then the court should deny summary judgment. *Impossible Elec. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could

---

[3] Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

return a verdict for the nonmoving party.").

Moreover, the party opposing a motion for summary judgment need not respond to it with evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 255.

## ANALYSIS

**A.     Count III - Section 1981 Hostile Work Environment Claim**

A plaintiff can establish a violation of Section 1981 by proving that racial discrimination created a hostile or abusive work environment. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th Cir. 2002).[4] In order to "establish that a workplace constitutes a 'hostile work environment,' a plaintiff must show that 'the workplace is *permeated* with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (emphasis added) (quoting *Harris v. Forklift Sys.,Inc.*, 510 U.S. 17, 21 (1993)). To that end, the Eleventh Circuit has held that a plaintiff wishing to establish a

---

[4] *Miller* involved a claim for hostile work environment under Title VII of the Civil Rights Act of 1964; however claims brought under Title VII and Section 1981 have the same requirements of proof and use the same analytical framework. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

hostile work environment claim must show the following:  (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his race or ethnicity; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive work environment; and (5) the defendant is responsible for such environment under a theory of vicarious liability or direct liability.  *Miller,* 277 F.3d at 1275.  Defendant argues that Plaintiff cannot establish a *prima facie* case for hostile work environment because he cannot establish the four and fifth elements.  Because the Court finds that Plaintiff has not demonstrated that there is a genuine issue of material fact with regards to the fourth element, the Court will not consider Defendant's argument with respect to the fifth element.

When determining whether the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive work environment, courts must look at the totality of the circumstances.  *Harris*, 510 U.S. at 23.  In doing so, courts often consider the following list of non-exhaustive factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."  *Id.*

Defendant argues that Plaintiff's allegations fall woefully short of the severe or pervasive standard because, *inter alia*, the comments made by Simmons and Fabrizio were isolated incidents and the men stopped making such comments as soon as Plaintiff confronted the situation.  In response, Plaintiff argues that Fabrizio's comments were so severe that they alone

create a hostile work environment.[5] (*See* Response at 5-6.)

By focusing solely on the severity of Fabrizio's statements, Plaintiff loses sight of the totality of circumstances approach adopted by the Eleventh Circuit. *See Miller*, 277 F.3d at 1276. Plaintiff has not put forth any evidence showing that Fabrizio's conduct was frequent or that it interfered with Plaintiff's job performance. Rather, the undisputed evidence shows that Fabrizio's phone call was a one-time incident and that Fabrizio never again contacted or threatened Plaintiff. Also, the evidence shows that Plaintiff did not work directly with Fabrizio or any other of Defendant's employees; rather, Plaintiff worked independently either from home or on-site at the customer's location. Furthermore, Plaintiff put forth no evidence demonstrating that Fabrizio's conduct unreasonably interfered with Plaintiff's job performance, that it discouraged Plaintiff from continuing to work for Defendant, or that it kept Plaintiff from advancing his career. *See Harris*, 510 U.S. at 22; *see also Godoy v. Habersham County*, 211 Fed. Appx. 850, 854 (11th Cir. 2006) (unpublished opinion) (granting summary judgment where plaintiff failed to show, *inter alia*, that the harassment unreasonably interfered with his performance).

Given the foregoing and viewing all evidence in its entirety, the Court finds that Plaintiff has failed to present a genuine issue of material fact that Fabrizio's conduct permeated Plaintiff's

---

[5] Plaintiff does not rely or even reference the comments made by Simmons to support of his hostile work environment claim. (*See* Response at 5-6.) Nonetheless, the Court finds that Simmons's comments, even if considered, would not alter the Court's finding that the alleged harassment was not sufficiently severe or pervasive to alter Plaintiff's working conditions. Plaintiff acknowledged that Simmons was "jokester," that his comments were not malicious, and that he ceased making comments as soon as he was asked. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) ("[S]imple teasing . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (internal quotations and citations omitted)).

work environment with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of his employment. *Harris*, 510 U.S. at 21. Accordingly, the Court grants Defendant summary judgment on Count III of Plaintiff's Complaint.

**B.      Count II - Section 1981 Disparate Treatment Claim**

A plaintiff establishes a *prima facie* case of disparate treatment through direct or circumstantial evidence. Direct evidence is evidence, "which if believed, would prove the existence of discrimination without inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989). If no direct evidence is available, a plaintiff must rely on circumstantial evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Under the *McDonnell* framework, a plaintiff must establish his *prima facie* case by showing that (1) he belongs to a racial or ethnic minority, (2) he was subjected to an adverse job action, (3) the employer treated similarly-situated employees outside his classification more favorably, and (4) he was qualified for his position. *Id.* If plaintiff has successfully established a *prima facie* case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.* at 1564. If the employer does so, the plaintiff has an opportunity to demonstrate that the employer's reasons are a mere pretext for discrimination. *Id.* at 1565.

In Count II of his Complaint, Plaintiff alleges that Defendant treated him differently

9

based on his ethnicity[6] and, notwithstanding his complaints of discrimination and harassment, Defendant failed and refused to investigate his complaints. (Compl. ¶¶ 19, 21.) Defendant argues that Plaintiff cannot establish his *prima facie* case for disparate treatment because he was not subjected to any adverse employment action and because Plaintiff cannot establish any similarly-situated employees outside of his protected category who were treated more favorably. Plaintiff apparently concedes this argument, as he does not address Defendant's Motion for Summary Judgment on Count II in his Response.

The Court finds that there are no genuine issues of material fact precluding summary judgment in favor of Defendant on Count II. To the extent that the "adverse employment action" complained of is Defendant's alleged failure to investigate Plaintiff's claim of harassment, Plaintiff's claim fails as a matter of law because the undisputed evidence is that Defendant investigated his complaints of harassment by conducting interviews with Fabrizio and Plaintiff. Additionally, to the extent that the "adverse employment action" complained of is "bad reviews and no raises since February 2006,"[7] Plaintiff's claim also fails as a matter of law because he has put forth no evidence that any similarly-situated employees outside his protected category were treated more favorably. Accordingly, the Court grants Defendant summary judgment on Count II of Plaintiff's Complaint.

**C.   Count I - Section 1981 Retaliation Claim**

---

[6]   Plaintiff also claims that he was treated differently on the basis of his national origin. The Court will not consider this "discrimination on the basis of national origin" claim, however, as it is not protected under Section 1981. *See St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

[7]   *See* Complaint ¶ 14 ("General Allegations").

A plaintiff establishes a *prima facie* case of retaliation under Section 1981 where he can demonstrate that (1) he was engaged in a statutorily protected activity, (2) he suffered a materially adverse employment action, and (3) there is a causal connection between his participation in the activity and the adverse employment action.[8]  *Little v. United Techs., Carrier Transicold Div.,* 103 F.3d 956, 959 (11th Cir. 1997).  Defendant argues that Plaintiff's retaliation claim fails because (I) he cannot demonstrate that he was engaged in a statutorily protected activity, (ii) his retaliation claim is based solely on an alleged discharge that Plaintiff admits never occurred, and (iii) Plaintiff's complaints are too temporally remote to be causally connected to the claimed constructive discharge.  In response, Plaintiff does not address whether he engaged in statutorily protected activity; rather, he argues that his denial of overtime work was an "adverse employment action."

The Court finds that Plaintiff has failed to establish the first element of his *prima facie* case alleging retaliatory discrimination: that he was engaged in a statutorily protected activity. The Eleventh Circuit has held that discriminatory remarks made by a plaintiff's co-worker cannot be attributed to the employer, and, thus, a plaintiff's opposition to a co-worker's discriminatory remarks does not constitute opposition to an unlawful employment practice or a "protected activity" under Section 1981.  *Little,*103 F.3d at 959; *Wilson v. Farley*, 203 Fed. Appx. 239 (11th

---

[8]     The Eleventh Circuit has recognizes that Section 1981 includes a cause of action for retaliation, but that the elements of the claim for retaliation under Section 1981 are not settled.  *See, e.g., Tucker v. Talladega City Schools*, 171 Fed. Appx. 289, 294 (11th Cir. 2006) (unpublished decision).  However, many courts have applied the elements of Title VII retaliation claims to Section 1981 retaliation claims, and the parties have agreed that the Title VII elements are to be applied to plaintiff's claim.  *See* Joint Stipulation (D.E. 35) at 6; *see, e.g., Tucker,* 171 Fed. Appx. At 294 (applying the elements of a Title VII retaliation claim to a Section 1981 claim).  Accordingly, the Court will apply the Title VII framework.

Cir. 2006) (unpublished decision) (holding that an employee's informal complaining to supervisors regarding co-worker's racial discrimination was not a protected activity); *see also Andrews v. Lakeshore Rehabilitation Hosp.*, 140 F.3d 1405, 1412 (11th Cir. 1998) (citing *Little* and noting that not all retaliation claims are necessarily cognizable under Section 1981). Thus, because Plaintiff has not established that any harassing remarks made by Fabrizio can be attributed to Defendant, Plaintiff's opposition to those remarks is not a protected activity.

Moreover, even assuming that Plaintiff's complaints of co-worker harassment was a protected activity, Plaintiff admits that the retaliatory action alleged – his constructive discharge – did not occur. (*See* Compl. ¶ 16.) The undisputed evidence shows that Plaintiff actively worked for Defendant until he was required to take medical leave for work related injuries. While on leave, Plaintiff remained employed and demonstrated an interest in returning to active employment with Defendant until he was laid off in March 2009. Thus, any claims of constructive discharge are without merit.[9]

Accordingly, the Court grants summary judgment to Defendant on Count I of Plaintiff's Complaint.

## CONCLUSION

Based on the forgoing, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Partial Judgment

---

[9] Plaintiff attempts to argue in his Response that the adverse employment action suffered was not constructive discharge, but rather denial of overtime. The Court will not consider this argument at this time, however, as the Complaint clearly states that the retaliatory action complained of was constructive discharge or termination on account of his complaints regarding racial discrimination. (*See* Compl ¶ 16.) The Court will not allow Plaintiff to amend his Complaint by re-casting arguments in his Response to Defendant's Motion.

is GRANTED.  Counts I, II, and III are DISMISSED WITH PREJUDICE.

DONE AND ORDERED in Chambers at Miami, Florida this 27th day of May, 2009.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided: Counsel of record